which is Porter v. Pennsylvania Department of Corrections et al. Now, growing up, my father was a Mets fan, I was a Yankees fan, and G-R-O-T-E is the last name of a famous baseball player for the Mets, a catcher, who was Jerry Grody. Is that how I pronounce your name? It is, and you know, the last time that I was asked that question was by, it was P.J. Smith, but that's not a great subject to use. Well, there are a lot of baseball fans on the first page. Why don't you come before us, sir? Thank you. Good morning, Your Honors. Fred Brody for Plaintiff Appellant Ernest Porter, and with your permission, I'd like to reserve three minutes for rebuttal time. Yes, sir. So this court, or this case comes before the court today on Ernest Porter's 33 years spent in solitary confinement in the capital case unit, otherwise known as death row, in the Pennsylvania Department of Corrections. During that time, he has had a spotless disciplinary record, and since 2003, he has not been serving any criminal sentence whatsoever, as the Eastern District of Pennsylvania Federal Court has vacated his sentence in 2003. He has yet to be resentenced, as that vacatur decision is basically stayed on appeal in the Third Circuit while there have been cross appeals on the guilt phase and the penalty issues, while there's also a state appeal that is ongoing. The court dealt with this particular procedural situation in the context of a procedural due process claim two years ago in Williams v. Secretary of Pennsylvania. Let me ask you this question, because I know you're about to incite Williams, and I think we're all familiar with this one. Yes. So tell me, what's the specific relief you seek right now in all aspects? In all aspects, there's claims for injunctive declaratory and damages relief. From this court, we are asking for a grant of summary judgment for the procedural due process claim that we brought in the district court, pursuant to Williams, or based on an alternative argument that, if you find Williams does not control, that under any plausible baseline, Mr. Porter's 33 years in solitary constitutes an atypical and significant hardship. As to the Eighth Amendment claim, where we did not raise a motion to file a motion for summary judgment, the defendants did. We are asking for the court to reverse the district court's grant of summary judgment on the Eighth Amendment, recognizing that there are disputes of material fact as to the extent of injury and risk suffered by Porter, as well as the defendant's deliberate indifference to those injuries and risks, and remand for trial on that. Is injunctive relief before us? You didn't really push it that hardly, as you wrote pretty brief. It is certainly before the court. It was certainly preserved as something that Mr. Porter brought in the lower courts. The district court made an error in claiming that Mr. Porter's claims were only seeking damages and declaratory relief. In our opening brief, we acknowledged that he was seeking injunctive relief and that the district court had made that error. He had filed a preliminary injunction in this case. In all of the briefing throughout, there has been distinction between the damages claims and the non-damages claims, the injunctive relief. The district court did acknowledge that he was challenging his continued confinement in solitary confinement on death row, so it would be quite odd if he were only seeking damages from that and not removal, but we believe the record is clear that he obviously is seeking injunctive relief on that matter. Don't you have to agree that Williams really didn't address the kind of case before us right now because the Commonwealth did not appeal the vacatur order? I disagree for several reasons. One, the Williams court found that the liberty interest attaches upon vacatur of the death sentence without any reference to the content or duration of appeals. In fact, the Williams court found that the plaintiffs exercised, Craig Williams and Corey Walker, of their appellate rights on the guilt phase issues was both meritless and disappointing as an argument. It was not relevant to whether or not they had a liberty interest in removal from death row. I find it very odd that this court is being asked to come to a different decision based on the Commonwealth exercise of its appellate rights. But there are further problems with the state's... But isn't the difference that there really is no vacatur here because that order was stayed? Incorrect, in our opinion. Respectfully disagree with that position. The reason being that no legal authority has been cited either by the district court or the Department of Corrections for the notion that a stay somehow deactivates or renders invalid or not yet legally controlling the order that is being stayed. Instead, we think that it's obvious dictionary definition that it has a temporary pause on proceeding with the next phase in the implementation of that order is what is in effect. So it is still the controlling decision. Mr. Porter's death sentence has been vacated. He's not subjected to an actual sentence. But it's not that the stay deactivates something that has occurred, isn't it? As the Supreme Court said, that the stay suspends the court's ability to change the status quo in the first place. There's nothing to be deactivated because it was never activated because of the stay. It prevents the court from changing the status quo insofar as it does not allow Mr. Porter to be resentenced. But the status quo, I will share with this court, was that Mr. Porter was actually under an execution of death sentence that itself was stayed by operation of Pennsylvania State Court. The Pennsylvania Rules of Appellate Procedure, 210 VA Rule of Appellate Procedure, I believe it's 1761, provides that any appeal of a sentence of death pursuant to Section 1741 stays the execution of the sentence of death. So if their argument rests on this alleged technical meaning of a stay, then everybody in the capital case unit in the state of Pennsylvania is under a state execution of death, which therefore would not be an active execution of death. I think the court can avoid all of these problems by recognizing that in Williams, the use of the term active and inactive was not done with any reference to jurisprudence on those terms. These are not terms of art. These were descriptors. And they were referring to, I think from the context, the following. Whether a death sentence has been lawfully imposed or whether it has been held by a court of competent jurisdiction to be unlawfully imposed and therefore not active, not presumptively legally correct, which, as the court noted in a footnote in Williams, means that life was Williams and Walker's to lose whenever they were granted that vacator. The same with Mr. Porter here. So based on that explanation, Porter, in your view, is not under an active death sentence as that term was used in Williams. Correct. Well, yeah, but the point is, reading Williams without getting technically involved in what we're doing here, is the death sentence in Williams was gone, buried. It's over. In contrast, the Commonwealth appeals here mean that Judge Kelly's vacatur of your client's sentence could be itself vacated. I would disagree with that characterization of Williams, that the death sentence was gone from the case. As the Commonwealth argued in Williams in front of this court, maybe a death sentence from that case was gone, but not the death sentence. They argued that the death sentence could have been reimposed at the resentencing, and that's why Williams and Walker had to remain on death row. Here they're arguing the death sentence can be reimposed by the Third Circuit Court of Appeals. Therefore, he poses the same risk because he's nearly eligible for the death sentence. Whether that reimposition happens in the appeals court or in a resentencing proceeding, it is essentially the same argument. I want to point out one more issue about the stay, which is that the vacatur in the district court is not merely stayed because the Commonwealth took an appeal of the vacatur of the death sentence. Under the local rule of the Eastern District of PA, which is implementing a rule of this court, if either party takes an appeal on any issue, the entirety of the order is stayed. In a hypothetical situation where Mr. Porter or somebody similarly situated appealed guilt-phase issues alone, and the state did not appeal the death sentence, in other words, it's the same case as Williams and Walker, except it's in federal court as opposed to state court, the order vacating his death sentence is still stayed. So adopting their argument would essentially undermine, overwrite, and overrule Williams v. Walker. I would like to... Right, because there'd never be an instance where there'd be a procedural due process right that would require the hearings that are alluded to, or mandated, I should say. I would say there would... If there were an active death sentence, there would just be a different analysis involved, which would be what is the baseline, and are the conditions faced by somebody with an active death sentence atypical and significant. This circuit is held that general population is the baseline. Even in the alternative, as we briefed, if they recognized, which I don't believe is the case, that the baseline is essentially death row. If you're on death row and the floor is the ceiling, the ceiling is the floor, then the duration still must be taken into account, and 33 years under these conditions is atypical and significant by any metric. I would like to touch on the Eighth Amendment argument, where I believe the district court committed clear legal error when it found that for a finding of deliberate indifference. This is not the only argument we have as to why there's disputes of material fact for the Eighth Amendment, but I would like to direct the court's attention to the Supreme Court case Farmer v. Brennan, in which the court said, whether a prison official had the requisite knowledge of the substantial risk is a question of fact subject to demonstration in usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of the substantial risk from the very fact that the risk was obvious. The court goes on to state that a prison official may be able to rebut the inference from the fact that a risk was obvious and say that they weren't in fact aware of the risk. In other words, this is a dispute of material fact. When the court said it's not sufficient at this phase in summary judgment, that was a misstatement of the law. Furthermore, when it seemed to imply that, not imply, it said, Defendant Wetzel and Defendant Gilmour did not have specific knowledge of Mr. Porter's mental state, that is also running afoul of Farmer v. Brennan, which acknowledged that if there were, the discussion was whether or not assaults were so prevalent, and they knew of this risk and failed to take action in a certain facility, they would be liable if they didn't know who somebody, the person who was going to be assaulted or the person who was going to do the assault. They didn't have to have the sort of specified knowledge as to those facts if the risk was so generalized, and the court has recognized that Defendant Wetzel, in particular, has been put on notice multiple times in multiple cases, including the Williams case, about what this court called the scientific consensus of the risks and harms of solitary detention. What is the difference between this case, of course, now and Peter Kidd? Is this basically the same case in which they recognize that this is going to go on ad infinitum 33 years? They recognize that if it were to go on ad infinitum, then that would raise other issues. I mean, it would raise a different record that's not before that court. Well, they recognize the very case that maybe they didn't foresee this case, but they said this case is on the horizon, which leads me to ask you this. What relief do you want from this court? If you were writing the opinion, what would you think that you would be entitled to under the facts of this case? So aside from the question of remand, that there were disputes of material fact, the actual relief that we would want from the court is a prohibition on holding human beings in solitary confinement for 33 years. That's what the record of this case permits. I think the risks are so clearly established, and the suffering that is involved is so obvious. Your position would be that somewhere along that 33-year timeline, there should have been a hearing, I take it, to determine whether to continue solitary confinement. So that would be the procedural due process argument. I think under the Eighth Amendment, what Justice Kennedy alluded to in his concurrence in the AOLA decision is more along the lines of the remedy, which is whether or not alternatives are required to long-term solitary confinement. So I know that other states that have moved away from these types of confinement, including on death row, sometimes maintain segregated units, in other words, segregated from the prison population. But they do not hold them in 22 and 23-hour solitary confinement. There's greater out-of-cell time. There's contact visits. There's access to programming, educational materials, et cetera. I know, but we have to determine, if we agree with you, that the 33 years are inappropriate, and that your case has been proved that it's punishment that was not the ordinary incidence of ordinary prison life. But we've got to say that someone that is sentenced to death and goes to solitary confinement, the day after he's there he's not entitled to anything except that for some period of time the government is entitled to keep him there until a later period of time. What is that later period of time, and what is he entitled to? A hearing, which – and what is he entitled to a hearing? One year after he's in solitary? Ten years? Twenty years? We don't want to run a prison here. We want to just adjudicate cases, and you're dealing with very, very sticky, horny problems. Understood. I also do not want to run a prison, but I'm often thinking of these questions myself nonetheless. I would say that a hearing in this instance would be required – if we're talking about solitary confinement with no fixed end date under the Department of Corrections policy in front of the court today, it would be required periodically. The department has to determine how periodically, whether that's 30 days or 90 days or annually, and I think the basis for this comes from Wilkinson v. Austin. Because in Wilkinson v. Austin, it was confinement in the Supermax facility and its indefinite duration that created the liberty interest. Similarly, if you are held in the capital case unit at SCI Green or Phoenix now, you are there for indefinite duration. And under the Third Circuit's discussion in Mims v. Schaap, as well as other cases, prison officials are required to see if there is a legitimate justification for continuing to subject somebody to these restrictions if a liberty interest detaches. But why isn't it a significant difference? This isn't just the department's policy, right? This is a statute. So all of these conditions of confinement cases that you've been talking about are different, I suggest, because this is the Pennsylvania legislature saying that Berlin may have to be on solitary confinement. I'm glad you raised that issue, and I would very much encourage the court to not simply look at the, I think it's the Section 4303 statute, but do look at that. At the beginning it says, upon receipt of the warrant. And then you go back to 4301, I think it is, and it says when the governor will sign the warrant. And the governor signs the warrant only upon completion of the appeals to the Pennsylvania Supreme Court and only after an appeal for writ of certiorari to the U.S. Supreme Court or the time period in which that appeal can be taken. The warrant is then only in effect for 60 days. And I would represent that this court also look at Williams v. Walker where it said in the record there, one of the plaintiffs, I can't remember if it was Williams or Walker, talked about their ability to receive social visits, right? That is not permitted under the 4303 statute when the state statute says people have to be on solitary confinement. And I would also like to point out that in the motion that this court denied last week, the motion to supplement the appendix, the Department of Corrections was representing that they intend to make the solitary confinement in the capital case unit a thing of the past, and that this was in response to litigation, not to legislation. And I think that would be a very fair question to put to the department as to whether or not they feel that they can remove people from conditions of solitary confinement, even with this statute in place. Let me ask – go ahead. One other point, though, leaving aside the statutory construction argument of your question, is that the Constitution controls. And as this court said in Williams, the DOC policy doesn't set what the liberty interest is or what the baseline would be for establishing the liberty interest. The state policy also cannot override the federal Constitution under the supremacy clause. Let me ask you this question and change the subject matter a little bit. Qualified immunity. So question. If qualified immunity applied to the individual defendant – I know your argument is that it doesn't under both prongs. I get that, just for the purposes of this question. Does that mean that the claims against the DOC itself would go away on the Eighth Amendment claims? Against – So the individual defendants and the DOC, they're all collapsed together. Yeah. As Mr. Porter brought up this case pro se, we have not been litigating it. It's the Pennsylvania Department of Corrections, this case, law saying that we can't sue the state. So for the injunctive claims, we're suing defendants Wetzel and Gilmore in their official capacity. So on – so question then. On the clearly – within the qualified immunity status on clearly established, for those purposes, I presume that they – obviously Williams is a key case for procedural. On the Eighth Amendment claim, is it Palachowicz? Palachowicz, yes. Palachowicz, right. Thank you. Now, in that case, there was a focus that defendants put plaintiffs into solitary, even though they knew he suffered from mental illness. Now, is that a sufficient distinction for us not to have to follow that? Or as far as the Eighth Amendment claim and the qualified immunity issue? I don't think it's sufficient to distinguish in terms of it not being instructive on this court. I'm familiar with two basic challenges to solitary under the Eighth Amendment. There's a third, but there's not too much disproportionate sentencing jurisprudence out there. The main ones are that people who are particularly vulnerable, psychologically vulnerable, have psychiatric or intellectual disabilities, should be prohibited from solitary confinement because their risk of acute decompensation and the pain that this brings on, the behavioral dysfunction including the dramatically increased rate of self-harm and suicidality is such that they cannot be kept in these conditions safely without making their health in perilous danger. Other number of cases that we have cited go at the other end of the spectrum where there's people that have been in so long that the durational element almost becomes outcome determinative. And there's not been a finding of serious mental illness, say, in Wilkerson v. Sadler in the District Court of Louisiana or in Asher v. Brown, the motion to dismiss decision in California or Shultz v. Wetzel in the Western District or Johnson v. Wetzel in the Middle District. Not a finding of serious mental illness. Eighth Amendment doesn't require that to show injury. You have to show a psychiatric diagnosis. But the extent of deprivations of social interaction, the fact that in this particular case, Mr. Porter is in his cell 158 out of 160 hours of the week, more than 94% of his life for 33 years, and the other time he's out of his cell, he's in an exercise cage, he's in what's euphemistically called a law library, which is a cage with a computer, he's in some other small enclosure for 100% of the time, that when that goes on for such an extraordinary duration, that's sufficient to meet the objective prong of the Eighth Amendment. As for the qualified immunity, whether it's clearly established, we think there is a robust consensus of cases that, combined with the duration of Mr. Porter's stay in solitary confinement, gave the defendants sufficient notice that they cannot do this, that this is not reasonable conduct. And I would like to direct this Court's attention to your own case in Carter v. City of Philadelphia. We didn't brief this one, but I think it's important for the qualified immunity analysis. Citations 181F3D339, point citation 356. Here the Court explicated how a finding of deliberate indifference will defeat a qualified immunity defense. Quote, qualified immunity protects official action if the officer's behavior was objectively reasonable in light of the constitutional rights affected. If Carter succeeds in establishing that the DA's office defendants acted with deliberate indifference to constitutional rights, as he must in order to recover under Section 1983, then a fortiori their conduct was not objectively reasonable. This is because deliberate indifference is a type of intentional wrongdoing. If you know of the risk of serious harm, of psychological and emotional pain and suffering, in keeping somebody in solitary confinement for this long, but you disregard that risk, this is a violation of clearly established law. How does the more specific provision rule affect the viability of your substantive due process? Our substantive due process claim is, we believe, consistent with the standard that this conduct shocks the conscience. It's different from the procedural due process claim in that we're not arguing that it violates substantive due process because Mr. Porter wasn't given the correct process. And we're not arguing the Eighth Amendment objective or subjective prongs or that it's totally without penological justification. It's irrespective of any of these concerns, separating somebody from meaningful social interaction in humanity for so long is shocking to the conscience. So that shocking of the conscience qualification description takes it out of the more specific provision rule so that the Eighth Amendment claim and the substantive due process don't overlap? That's our position, yes. On the issue of duration, we can stipulate that nobody gets criticized for exercising their appeal rights, of course. But there's a reasonable argument to be made, and I think the Pennsylvania Supreme Court has made it here, that in this particular case, Mr. Porter has engineered his various appeals and through representations to the state courts and the federal courts in such a way that he wants this to go on for so long, indefinitely. What are we to make of that? Mr. Porter's legal strategy, whether it's been discussed with me or between him and his counsel on the criminal side, just has no bearing on the conditions of confinement argument. There's nowhere in the case law which talks about how somebody conducts their appeals, right, in the criminal process, in the capital case process specifically, has any bearing on whether we determine that there is a liberty interest. Is it true that there's been no hearing in which it's been determined that solitary confinement has actually had a negative effect upon your client? There's been no hearing to that point. There has not been a hearing. There is competent evidence in the record that would create a dispute of material fact about whether he has suffered injury. I'm sorry about the individual. There's evidence that others and that this type of conduct results in deleterious effects. But as far as your client is concerned, there's nothing before the court except the proof that this procedure is not favored for mental problems. There is. In the joint appendix, if you will look at Mr. Porter's complaint, it is a verified complaint, and in that he alleges that he has suffered irreversible damage, including severe anxiety, depression, panic, paranoia, bipolar mood swings, and sometimes suicidal impulses. This court has recognized in, I forget the name of it, it's Simpson v. Calpett from 2017, along with Reese v. Sparks, that a verified complaint is sufficient, competent evidence at the summary judgment stage. And I would also argue that nobody is better positioned than Mr. Porter than to talk about what 33 years of solitary confinement has done to him or how it has affected him. So there is evidence of injury that he has put into the record for that verified complaint. So going one step forward, you would say that there's been an adjudication, at least there was or should have been, was error on the district court's part, not to find that there are effects from his conduct. So there was an error that the district court didn't recognize that evidence was in the record? It was not. There was not an evidentiary hearing on it as such. It was an allegation. When he filed it, yes, it's an allegation in a verified complaint, but they did not have a hearing on it. He did file a motion for preliminary injunction. That was adjudicated prior to our entry to the case, and the court did not hold a hearing on that motion. Do you agree that there needs to be specific harm to Mr. Porter and that we can't just presume harm from the social science? I believe that harm can be recognized irrespective of the specific harm to Mr. Porter in two ways. One is I think there is case law which has recognized social interaction as a basic human need, and I believe 33 years in the conditions of solitary confinement that Mr. Porter has been subjected to deprive him of social interaction. Additionally, the substantial risk of serious harm is a constitutional injury sufficient to create a dispute of material fact. That should allow this case to go forward to trial. But so I think we still win even without the allegations in the verified complaint that Mr. Porter has suffered irreversible damage, anxiety, depression, panic, paranoia, et cetera, but we do also have those allegations. Then basically to follow your logic, we have to send this back to the district court for them to make findings as a matter of law that the conduct that he's been subjected to are deleterious, are in violation of substantive due process or the Eighth Amendment. We can't make that finding here. Correct. What's in front of the court right now is whether there's disputes of material fact. It has to go back to the district court so there's a trial on the 8th Amendment issue. There would be a trial in the district court finding that this is improper conduct under constitutional law. But at this point, aside from remanding it back to the district court for further proceedings, I'm sort of at a loss to determine what we could do under your appeal, even though I recognize that 33 years in solitary is obviously going to have some repercussion. But I don't want to deal with something unless there's a record and the court can say based on this record people who are in solitary for so long, certainly not 33 years, are entitled to some sort of hearing, even though I do not, although we do not question the Bureau of Prison's position that if you are convicted of murder and immediately put in death row, that we do not question that as not being an ordinary incidence of prison life if you are convicted and waiting immediately to be executed. But if you've been there for a couple of years, for I don't know what period of time, you're entitled to some sort of determination that perhaps there should be a lesser type of confinement so that you don't go to the bunkers while you're waiting to be executed, which could be never. But aside from that, I'm troubled as to how to handle this without remanding it back to the district court. And I'm not trying to duck a thorny question here. I'm trying to do my job here. But how can you do it without having a finding at the district court level? And I would like to clarify any confusion I may have contributed to. I think what's in front of the court right now are what we would be entitled to is a grant of summary judgment on the procedural due process claim pursuant to Williams or, if you find Williams doesn't apply, pursuant to any alternative plausible baseline. On the Eighth Amendment issue, I think that remand is what is in front of this court. I was asked a question earlier about what would you like us to do, kind of what rule of law should be written, how would the prison officials deal with this holding. So I tried to answer that in terms of what I think would be the appropriate standard. Why are you entitled to a summary to prevail on the Williams issue? Because Williams decided the issue. He has a liberty interest because his death sentence has been vacated. Well, yes, but the law is clear. His death sentence has been vacated, but there's a vacature. You mean a stay? His death sentence can be reinstated, can it not? Just as it could in Williams at a resentencing. And it was the six and eight years between the vacature, the grant of vacature without reference to the completion of the appeals process, to the resentencing to life without parole that established the liberty interest in Williams and Walker. Here we have a much longer period of time from 2003 to 2019, but it's, well, presumably the same. At one end there will be a resentencing or in 2000, there was the vacature and then there will be a resentencing. There's the prospect of what could happen on appeal in the Third Circuit on the guilt or the penalty phase issues, but there was also open questions of appeal for Williams and Walker. Just to be clear on this point, even if we grant a temporary judgment to you on the procedural due process claim based on Williams, all that does is it gives Mr. Porter regular or periodic review. Correct. We think he will do very well at periodic reviews as he has literally no disciplinary record. How can he get periodic reviews when the statute says he has to stay in there? It's not a matter of discretion with periodic reviews. The statute does not state that he has to be in there for the reasons that I explained earlier. That is only a requirement that he be held in solitary confinement upon receipt of a warrant. I remember that, but doesn't the statute say that upon the delivery of the execution warrant, he stays in there until the sentence is imposed or he's, I forget the phrase, otherwise released or something. Doesn't it say that? I forget the exact language at the end. This reminds me of a case I found just yesterday, not in our brief, where Judge Cohen, you wrote the opinion back in 1987 with Biaginwald v. Fowler. That was a case out of New Jersey in which an individual who was sentenced to death had his sentence vacated and he spent a year and a half in the capital case unit after that vacatur. New Jersey argued in the lower courts that there was a statute that says we have to keep him in solitary unless he's discharged from the sentence. Does the vacatur mean that he's discharged or not? Eventually, New Jersey let him out in the general population. Then he was resentenced and he was sentenced to death again. He went to the capital case unit. When it got to the Third Circuit, the issue was whether the district court properly exercised Pullman abstention and it didn't decide the due process issue. You found that they did not. There was some ambiguity in what the state statute required. That case, however, was prior to Sands v. Conner. That was under the prevailing due process standards for conditions of confinement or prison conditions at the time which required an expectation created by policy regulation or statute. Sands v. Conner, quote, abrogated Hewitt's methodology of looking for those types of regulations. I thought your response to Judge Porter's question was going to be the Constitution trumps the state statute. Right. I was just getting to that. Sands v. Conner abrogated Hewitt's methodology and you have to look at the conditions of confinement to see if they're atypical in significance. As recognized in Williams, state policy cannot trump that determination or cannot control that determination. The conditions themselves, this court acknowledged many, many times in Williams. The Constitution does trump. Back to Williams for a minute. You said that the death penalty could have been reinstated in that case. How is that since the government didn't appeal? But the resentencing. The resentencing, correct. So they didn't because a prosecutor can determine that this sentence was imposed unconstitutionally. We see that this is a clear issue. Counsel was ineffective. There was evidence that was withheld, right. There needs to be a resentencing proceeding in which we're still going to seek the death penalty because we think that is the appropriate aggravators and that is the appropriate sentence. And that was the department's position. That's not something I just came up with. That was their position in 2017. Judge Porter raised a point about 10 minutes ago that I would like to get back to. And he'll correct me if I'm wrong in characterizing it. But it had to do with essentially Mr. Porter driving the ship on procedurally how his case has gone through the system. Now, help me on something because I think your adversary makes this argument as well. When we look at the 2254 and the operation of the local rule in point of fact, both the state and Mr. Porter at that juncture appeal. Is that right? Correct. So it's not in anyone's particular bailiwick to control because even if Mr. Porter withdrew any appeal that he had, the state would still be in effect until the Commonwealth's appeal was resolved. Yes, or vice versa. Correct. And I would just say that every conceivable order in Mr. Porter's case, whether it's of the two that are at issue, the death sentence is state under Pennsylvania state rule of appellate procedure and the district court's ruling is state under rules of federal court procedure. So everything is state. I don't think this case can hinge on the meaning of a state. If there's no further questions, I'll save the rest of my time. I don't have a baseball story for you, Mr. Mullins. There's no famous Mullins there. You may please the court. Daniel Mullins from the Pennsylvania Office of Attorney General on behalf of the appellees. With respect to Porter's procedural due process claim, this court's decision in Williams does not control here because I think as this court understands, in that case, there was no appeal by the Commonwealth. And had there been, that would have effectuated a stay of the PCRA decision. Conversely, in this case, there was an appeal by the Commonwealth of the habeas decision and that appeal effectuated a stay which remains in place today. And it remains in place today, to Judge Porter's point, it remains in place today because Porter engaged in a deliberate strategy of essentially producing a procedural stalemate on that case and preventing this court from reaching a decision one way or the other as to whether or not the habeas court was correct in granting a new penalty. So you're saying that your appeal only came about because of the procedural shenanigans of Mr. Porter? No, Your Honor. I'm saying we don't have finality. That appeal remains pending before this court because of the procedural shenanigans of Mr. Porter. We don't have it still before this court. And he, by filing a number of PCRA petitions that, according to the Pennsylvania Supreme Court, he had no real intention of actually getting finality on, he prevented this court from ultimately reaching a decision one way or the other as to whether or not the habeas court was correct. So my clients are, they follow the law, they will follow Williams and Walker one way or the other, but the issue with this court, before this court, is whether or not his death sentence was legally operative. And there was confusion as to whether or not his death sentence was legally operative because of the procedural shenanigans, to use Your Honor's term. Well, I was trying to characterize what I thought you were saying, but I don't think there were any shenanigans at all. Well, that's what the Pennsylvania Supreme Court found, Your Honor. In any case, if we decide that Williams governs Porter's procedural due process claim, what relief, in your view, does Williams require us to render? Well, I think, based on Williams, we would enjoy qualified immunity because that's not clearly established prior to now that Williams controls those situations in which there's a stay of the habeas decision. So I think we would enjoy qualified immunity under that scenario. Well, I'm not sure I understand. If the predicate to the question is that Williams applies, then the response would be, I suppose, on your part, it's not clearly established if we were talking about actions taken pre-2017. But with regard to now, you'd agree that Williams would have to be considered, determined to be clearly established, no? I mean, it's a 2017 opinion. So, yes, I'm not understanding. My point, Your Honor, was that if this court were to hold that Williams applies here, it would be extending Williams to a new factual scenario and that that was not beyond debate prior to this occurrence, such that it would only apply to prospective cases. So the stay, in your view, makes it sufficiently distinct that we can't apply Williams? Yes, Your Honor, because I think qualified immunity, as you well know, it protects officials who make reasonable but mistaken judgments. So let me ask you this question. Let's assume for the moment that I disagree with you on the effect of the stay. Then what would Williams require with regard to relief to Mr. Porter? Well, I think according to Williams, it would require some sort of periodic review of his conditions of confinement. Because if you were to rule that Williams and Walker governed this case, he no longer has a legally operative sentence of death and therefore he would be entitled to have his conditions of confinement examined on a periodic basis. Well, in both Williams and in this case, even if we granted him the ability to have a periodic review, I think it's apparent that down the procedural road, the death penalty could be reinstated. That is a possibility in the scenario in Williams and in the scenario here. Do you agree with that proposition? Yes, so both in terms of if this court overturns the habeas court's decision or if there's a resentencing against the death penalty. Again, that remains a possibility. Right. So if it's a possibility in both Williams and here, then the stay, which is a peculiarity of a local rule in the Eastern District, is the difference in the application of Williams. That's your point. I respectfully disagree, actually. I think pursuant to the state court rules of appellate procedure, had the commonwealth filed an appeal of the PCRA decisions in Williams and Walker, that also would have effectuated stays of those decisions. But instead, the commonwealth essentially agreeing. So the state commonwealth determination of the PCRA would have affected the 2254? No, I'm saying had hypothetically had the commonwealth elected to appeal the PCRA court decisions, there are state rules of appellate procedure that provide that there's an automatic supersedious upon appeal by the commonwealth. I think the key point, Your Honor, is that the commonwealth elected not to challenge that decision, essentially agreeing with the PCRA court that Williams and Walker were entitled to new penalties. And at that moment, their sentences of death, according to this court's decision, became legally inoperative. Versus in this case, it remains an open question as to whether or not this court will sanction what the habeas court did in granting a new penalty phase. I have just a factual question. It goes to the statute. It says that upon receipt of the execution warrant, the defendant goes into solitary. I assume there is an execution warrant or somebody would have ferreted this out. But we haven't seen it on the commonwealth's website where they list execution warrants. Is there, in fact, an execution warrant for Mr. Porter? You know what, I don't have the right answer for you on that, Your Honor. Well, there is. The 60 days have run, so it's null in any event. That's correct. Well, let me answer this. What is your position concerning the resolution of this case? You say that there should be periodic review as to inmates held in solitary confinement after a certain period of time. Do you agree with that? I don't agree with that. We disagree that Williams and Walker applies here. I was acknowledging, though, if it does apply, that there would be some sort of periodic review. So your position is that he remains under threat of death. He remains under a legally operative sentence of death by virtue of the stay that remains in place. Therefore, because he has a potential to be put to death, the fact that he's held in solitary is an ordinary incidence of that potential. That's right. It's part of the sentence imposed. Now, his position is, 33 years later, after he received this potential, it has not been realized that people held in solitary that period of time are obviously going to have mental problems beyond what would be ordinarily expected of someone held in jail, and that there should be some relief, number one, concerning people such as himself, as well as others held in solitary for a lesser period of time. And secondly, that as far as his position is concerned, that there has been obviously a violation of his constitutional rights, which he's entitled to regress. What is your position on those two issues? Yes, Your Honor. Well, that obviously relates to the Eighth Amendment claim, the obviousness of the harm. But I think all of the cases that he relies upon where it says you can find an Eighth Amendment violation based upon it being obvious harm, there was some concrete injury to those inmates. So in Farmer, there was actual injury to the inmate. In Palakovic, there was a suicide where the inmate had a documented history of previous suicide attempts and extensive mental health issues. I read those cases as, yes, if you have a concrete injury, but I think we can take it as a given that someone who receives an injury because they're subject to psychological reaction to confinement is as much an injury as being hit over the head, maybe even worse. So if that's the law, a logical extension of it would be someone in solitary confinement who could show that after a certain period of time it has effects which are unconstitutional for people being held. Those people, number one, are entitled to some sort of relief. And secondly, and some of that proves this was done intentionally, by prison authorities, are entitled to a determination that they're entitled to retrogress for their injury. Well, I think the key point, Your Honor, is that you need some evidence that the inmate in question actually suffered those adverse consequences. And now he's trying to rely upon these allegations in his complaint and say that that should really be used as an affidavit. But he didn't present that argument to the trial court. There were joint facts here that were presented to the trial court at summary judgment. But if you're at the trial court and you have a verified complaint, it's not on Mr. Porter to take the substance of the verified complaint and treat it as such, right? So the conclusion, as I understand it, that the magistrate judge made, was that he had not shown any actual mental decompensation. But in the verified complaint, which you're supposed to take essentially as an affidavit for purposes of determining whether there's a genuine dispute, right? I don't really agree with that composition. He talked about severe anxiety, depression, paranoia, bipolar mood swings, suicidal impulses. I think your adversary alluded to those. Why isn't that enough in the context of the Eighth Amendment claim to create a genuine dispute? Because I think the brief at summary judgment and the joint statement that both parties relied upon supplanted whatever assertions he was making in the complaint. And if he wanted to argue to the trial court that treat my complaint as an affidavit and treat my assertions with respect to bipolar disorder, suicidal ideation, things like that, treat those as facts, he didn't urge the trial court to do that. You don't think the trial court is obligated to treat the verified complaint that way? I think the trial court reasonably can rely upon the joint statement of material facts in terms of what the parties are identifying as the material facts and the material parts of the record for the issues at summary judgment and isn't necessarily required to go beyond that if the plaintiff isn't pointing the trial court in that direction. He was relying solely upon his sort of generalized attack on solitary confinement. Was he pro se at that point? No, he had counsel by the time we got to summary judgment. The complaint initially was pro se, but then he obtained Mr. Brody. Well, then what your position is at the very least is that there would be, he'd be entitled to a revamp to the district court to find out if he has adverse effects from solitary confinement. Is that correct? I don't believe a remand is necessary, Your Honor. We went through discovery, and there was an opportunity to develop the record, and presumably if there was any evidence to support the allegations in the complaint as to his mental decompensation, they would have been able to put that in the record. And so I think the basis for the trial court's decision was that there was no evidence to actually back up that finding. It was basically just a bald version. The evidence is the complaint. The evidence is before the court. And there was no contrary evidence from the government, was there, that he has no effect from this confinement, was there? I mean, there was simply no evidence of record to support it, and he wasn't. . . The evidence of record is the allegation, period. Now, that evidence is there, and the trial court has got to recognize it unless it's disputed by the government, and the trial court can then say, I don't believe the evidence of the verified complaint is of no consequence. I don't credit it. Well, the government's response in the answer was that those are, you know, essentially medical conclusions and demanded strict proof of those allegations. He never provided that proof.  I see my time is up. You're here for a long time. Meg. You're here for an Eighth Amendment violation yourself, so don't worry about it. We're going to put you through the . . . Cruel and unusual. So that at the very least, it appears to me that he's entitled to a remand to determine whether or not he has any effects from 33 years of solitary. I think a remand on that question would be a waste of time, Your Honor. We had discovery, and discovery did not reveal that he actually had any of those conditions that he alleged. But part of the record is the verified complaint, so it is in the record, and it was not disputed by you in any type of evidence. But it was not . . . But Mr. Porter did not point to that as a material fact he was relying upon at summary judgment. He was just relying upon the sort of general findings about solitary confinement. So I think the disconnect, if I may jump in, is the judge's point is if you send it back, the magistrate judge would be obligated to take the verified complaint into account. And in fact, one could argue that the magistrate judge should have taken the verified complaint into account the first time, but put the past aside for a moment. You would agree with the proposition that if the verified complaint were before the magistrate judge or district court, as it were, that that could provide the basis for a genuine dispute of material fact. I think conceivably it could, Your Honor. But I also think importantly the trial court relied upon this court's decision in Peterkin, and then there's also the Griffin case from 1997. So I think based upon this court's precedent, which says that it does not violate the Eighth Amendment, the conditions of death row inmates in Pennsylvania. So I think even if we were to go back and grant him that. But Peterkin, that's a facial challenge on the conditions of death row, right? Correct. Generally. So Peterkin's on its face distinguishable, yeah? That's correct, Your Honor. Okay. So let's go back to this point on the verified complaint. The verified complaint is your point that if you took the verified complaint into consideration, it wouldn't, in and of itself, it wouldn't create a genuine dispute? I mean, you've reviewed the verified complaint, right? Yes. I mean, there is nothing standing now in the record opposite to the verified complaint. So that if you took the verified complaint into consideration, in which Mr. Porter says he suffers from the maladies and I won't repeat them, right? There is no competing document from the state to say that there is a dispute as to his assertions made in the verified complaint. And a competing document other than the answer. There's no, you know. Right. Yeah, so there's no document saying he doesn't have these conditions, but there's no document saying that he does either. And you don't think the magistrate, just as a matter of law, you don't think the magistrate judge was, I know you say she wasn't pointed to that, but she was not obligated to look at the verified complaint. I think she was obligated to look at it, but I don't think it completely binds her and requires a trial on the Eighth Amendment question necessarily. Fair enough. But if she has to consider it, that requires her to consider it at least in the first instance. Yeah, I think it requires at least consideration. Okay, and if it wasn't considered, and let us say it's sent back for trial, for retrial, for reconsideration, and it is obviously it should be considered because it's a verified complaint together with any other evidence that Mr. Porter or the government wants to put in, the court would have to make a determination whether 33 years in solitary was not an ordinary incidence of prison life and that he suffers consequences from this. If the court were to conclude that, then you would be obligated to recognize that his constitutional rights have been violated, correct? Just to clarify, you're saying if this court were to- No, no. If the magistrate judge and the district court find that his rights have been violated by this confinement in solitary, then that would be a violation of his constitutional rights, correct? If the trial court made that determination, I think qualified immunity would still apply here based upon Peterkin and Griffin. So I think even if the trial court did make that determination, we would still be protected by qualified immunity. Well, if the trial court made that determination, that would be the first prong. The second prong would be what recompense is going to happen, whether it was well- Clearly established. Clearly established or whether it should have been known to the prison authorities by reason of prior case law. Correct. Which dealt with it but didn't deal with it, obviously, in the fine print the way we're dealing with it here. Correct, Your Honor. Prior to the Fourth Circuit's decision in Porter, which came out, I believe it was May of this year, while we were in the briefing phase for this case, no court had squarely held that long-term solitary confinement on death row violates the Eighth Amendment. So I think in light of that, it would be an instance where qualified immunity would apply under that second prong. Well, we're dealing, number one, right here with the first prong. And then you don't deal with the second until there's a first prong satisfied. Well, it depends. Under Pearson v. Callahan, courts have discretion to sometimes jump ahead to the second prong. And say we don't have to adjudicate the first prong, correct? That's exactly right. We're not in that phase right here in this case. We don't have to deal with the second prong and then say that it satisfies us so that we don't have to deal with the first prong. Because you disagree that there's been any violation of any constitutional right. Correct, Your Honor. All right. So does that, of necessity, in order for us to adjudicate this, require that it be sent back to the district court to determine whether or not there was a violation of the first prong? Not necessarily. Because I think this court would have discretion to basically jump over the first prong and say regardless of whether or not it's a violation, it's not clearly established as such by prior case law. Well, do you concede that the defendants were aware of the potential harms associated with solitary confinement or at least the jury could conclude that the defendants were so aware? I think that, you know, there was some testimony from Secretary Wetzel saying that there could be harms associated with solitary confinement. But I don't think there's any evidence that they were aware that this particular inmate suffered any of those adverse consequences. Yeah, but it seems to me very strange that prison authorities who have dealt with, God knows, thousands of people in solitary confinement were not aware that solitary confinement is not like a ordinary prison life experience for the general population. I mean, I don't know what the actual facts are. But I dare say it certainly is, in my mind, not settled that this was known or should have been known or really known to prison authorities. Are you familiar with Johnson v. Wetzel? The middle district case from 2016? Yeah. Okay, because there's two Johnson... Yeah, that's why we have... Right, that's the one. Okay. You're familiar with that? I am, Your Honor. So, you know that in that instance, Wetzel acknowledged that the long-term solitary confinement could have negative effects on mental health, and he was familiar with the work of a doctor who had published work on the harmful effects of solitary. So, I mean, that certainly could be ascribed to him as having knowledge. So, as far as the question, you know, is there knowledge by one defendant? You know, that's certainly there. And I think in a deposition in this case, the DOC rep that was put up for deposition said that capital case inmates start to decompensate or emotionally or mentally shut down in solitary confinement. Now, that was said in that case. Related to this case, and certainly someone 33 years on solitary confinement, I think we can certainly take judicial notice based on that statement that, you know, the defendants were aware of the potential harm. That's not unreasonable. You'd agree with that. Yes, but I think you still have the subjective element of deliberate indifference, and I don't think there's any proof as part of this record that my clients were deliberately indifferent to that. In fact, the evidence of record is that they responded reasonably to the risk by providing supplemental mental health benefits. And so I think that even if we could grant you on the risk aspect of it, I don't think there's any evidence of deliberate indifference. Well, not the evidence itself. They gave treatment to inmates who were in solitary to cure the problems that were created by being in solitary. At the very least, let me put it this way. Just as whether or not we can establish in this court that there's been a violation of Constance's right, I think it has to go back for a hearing with the allegations of a complaint being considered. And if there be finding by the district court that there is a violation of Constance's right, then there has to be a hearing as to whether or not the prison authority in question was deliberately indifferent or whether he should have known. And his conduct was beyond negligent. His conduct was such that he should have known, even though it was not acknowledged that this was having deleterious effects on inmates with prolonged conduct. So why should we – let me answer this. I'm not trying to duck work here. I'm trying to do it correctly. Why should we remand this back to the district court for them to do a job that we can't do here? We can't determine whether or not there's a violation of the First Amendment unless there's been a finding that that's the fact. Because to satisfy the subjective element of an Eighth Amendment violation, there must be proof that my clients knew of and disregarded the risk to health and safety. And I think there's no evidence to support that they disregarded the risk. Was there ever a hearing at which that question was posed for adjudication? I think it's based – not that I'm aware of other than the summary judgment hearing, Your Honor. Well, that's not an evidentiary hearing on a trial question. There's got to be a hearing as to whether or not someone's rights have or have not been violated. Of course, the prison authorities are going to say that they have not, but that's not the position of the complainant. But I think my clients responded reasonably to the risk associated with solitary confinement, and that's in the record here, by providing additional mental health services, and there's no evidence that Mr. Porter availed himself or found it necessary to avail himself. I totally get the point you just made, but doesn't that create the perfect storm, if you will, of Judge Callen's point? And that is, with regard to the deliberate indifference point, I just read to you, and there's other information in the record, about the knowledge that your client specifically and generally had about the deleterious effects of solitary confinement. Your report is that, in the record, there is other information about things that were offered but not taken advantage of. Isn't that the best example that there is a genuine dispute that should be resolved not by us in the first instance, but by the trial court? But, Your Honor, it's not just knowledge of the risk, it's a knowledge and a disregard of the risk. And I think because there was no evidence of a disregard for the risk, the evidence is actually the opposite. The evidence is that we took this risk into account and were sensitive to the fact that it had the potential for certain... And what changed based on an appreciation of that risk? Sorry, can you repeat that, Your Honor? I said, you said you understood the risk and then you acted, or your clients acted upon the knowledge of that risk. And I said, what is the evidence in the record as to the reaction to the understanding or acknowledgement or appreciation of the risk? Where in the record does it... What did they do? They provided additional mental health services to the extent anybody is experiencing the adverse effects of solitary confinement. What? They could go see a psychiatrist, they could... Yes. Yes, they could go see a psychiatrist. That was just thrown out. I'd like you to tell me what... Yes, they could go see a psychiatrist, and if somebody did decompensate to the point where solitary is causing really harmful effects, then they can, in some instances, be taken out of the capital case unit and that can be addressed. And there was no evidence that, again, this reporter availed himself of those supplemental services or that it was necessary. I have one other question, but... How can they be taken out if the statute says they have to stay in? You said if an inmate shows signs of decomposition, they can be taken out of the capital case unit, but I thought the reason they were in there all of this time was because Section 61PS4303 says they have to stay in. The statute does say that, Your Honor, and I don't think it's that they're taken out of the capital case unit altogether, but they are... The fact that isolation might be having an effect on that particular individual, there's an opportunity to address it in that scenario. Has that ever happened that you're aware of? Not that I'm aware of, Your Honor. What is the Commonwealth's peniological interest in keeping someone solitary? I understand the nothing to lose theory. You don't have to repeat that. I certainly understand that one. But here's the point that I'd like to get to. I'm trying to appreciate the difference in, if there is any, in the safety concerns associated with the plaintiffs in Williams and here. In Williams, we held that the plaintiffs had a procedural due process interest in avoiding indefinite solitary confinement and required the Commonwealth to institute a meaningful review. Are there any safety concerns that, in your judgment, require a different result here than in Williams? No, there's no safety concerns specific to Mr. Porter. It's just as...  Okay, thank you very much, sir. Thank you. A couple points in rebuttal and address any questions you have. First, when it comes to what was in the district court's decision, that there was no evidence of deliberate indifference because mental health services are available, that misses the point. This was not a mental health care claim. I know if we bring mental health or medical care claims against custodial officials, we are met with case law, which says if they are entrusted to the care of a medical professional, then there will be no liabilities. That would also be ironic if we also had to prove mental health care claim against non-medical providers. But just as you cannot keep somebody in a cell that had a fuse that would shoot sparks and cause fires, so long as you provided burn care, which you should provide burn care if you keep somebody in a cell where it catches on fire, you would have to actually stop the fires from being started to remedy the conditions issue. You cannot keep somebody in solitary confinement until you push them over the line to some threshold of mental illness, so long as you provide care for them. The point you just made there is why this case, although it purports to be an as-implied case from a supporter, it really seems like a facial challenge to all of the deaths of inmates in Pennsylvania. I would say that it's not just because the facts of this case are the facts of this case. He's been there 33 years, so we're not asking you to determine when. But under your theory of harm, since there's really no individualized harm and it's based on sort of general knowledge about what happens to inmates in long-term solitary confinement, wouldn't all of the same arguments apply to any inmate who's been in there for 10 years, 5 years, 20 years? They certainly could apply, and I'm counsel in Reed v. Wetzel, the class action that is challenging solitary confinement for all on death row, but that doesn't mean they're going to be analyzed the same, because since Huddle v. Finney in 1978, the U.S. Supreme Court has instructed, and every circuit court, including this one, has recognized that duration must be taken into account. So what sort of precedent this would set for future cases or ongoing cases will be determined the way that the common law develops. As to your question as to whether you're opposing counsel, if he was aware if anybody had been removed from the capital case unit, I can tell you on personal knowledge that there are people who are considered D codes. There's stability rating D, which means they are the least stable in the Department of Corrections psychological stability system. They get the most intensive types of mental health care, and there have been occasions where they have been removed from the capital case unit since the 2015 settlement in the Disability Rights Network lawsuit into something called the Diversionary Treatment Unit, in SCI Green, where they will get 20 hours out of cell per week. So there is that information, and as to the penological necessity issue, I will just also mention that they did file a motion claiming that the record should be supplemented with evidence that they intend to end death row solitary confinement. So I think the court can fairly question which is it, the statute that forces them to do this, or don't worry about it because we're going to end solitary confinement without a statutory change. Any further questions? I see my time is up. No. Thank you. Let's see.